**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION**

| | |
|---|---|
| GINA C. JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 3:16-cv-00671-JHE |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION[1]**

Plaintiff Gina C. Jones ("Jones") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). Jones timely pursued and exhausted her administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

Jones protectively filed an application for SSI on June 12, 2013, alleging disability beginning on her filing date. (Tr. 22, 239-240). Jones was a forty-seven year old female on the date she filed her application. (Tr. 39). Jones has a high school education. (*Id.*). The Commissioner initially denied Jones application, (tr. 140-43), and Jones requested a hearing

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties in this case have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 12).

before an ALJ, (tr. 145-147). After a hearing, the ALJ denied Jones's claim on September 12, 2014. (Tr. 41). Jones sought review by the Appeals Council, but it declined her request on March 16, 2016. (Tr. 1-7). On that date, the ALJ's decision became the final decision of the Commissioner. On April 26, 2016, Jones initiated this action. (*See* doc. 1).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390, 91 S. Ct. 1420, 1422 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

2

legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999);

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499, revised as of April 1, 2007.

*accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Jones had not engaged in substantial gainful activity since June 12, 2013, the alleged onset date of her disability. (Tr. 24). At Step Two, the ALJ found Jones has the following severe impairments: Type II diabetes mellitus with mild diabetic peripheral neuropathy, degenerative disk disease of the lumbar spine at L4-5, morbid obesity, fibromyalgia, and an anxiety disorder. (*Id.*). The ALJ noted that Jones had a history of finger lacerations and had suffered from sinusitis, headaches, and kidney disease, but none of these impairments imposed limitations on her ability to perform basic work-related activities; therefore, they were non-severe. (Tr. 24-27). At Step Three, the ALJ found Jones does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27).

Before proceeding to Step Four, the ALJ determined Jones's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined Jones has the RFC

to perform light work as defined in 20 C.F.R. 416.967(b) except she can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. She can stand and/or walk in combination, with normal breaks, for at least 6 hours during an 8-hour workday and sit, with normal breaks, for up to 9 hours during an 8-hour workday. The claimant can occasionally climb ramps and stairs and she should never climb ladders, ropes, or scaffolds. The claimant can frequently balance and occasionally stoop, kneel, crouch, and crawl. The claimant should not be required to perform push/pull movements or operate foot controls with her lower extremities bilaterally. She should avoid concentrated exposure to extreme heat, extreme cold, wetness, humidity, and working in areas of vibration. The claimant should avoid concentrated exposure to pulmonary irritants including fumes, dusts, gases, odors, and areas of poor ventilation. The claimant should not be required to work near industrial hazards including working at unprotected heights, working in close proximity to moving dangerous machinery, and the operation of motorized vehicles and equipment. She can perform simple routine tasks requiring no more than short simple instructions and simple interactions with co-workers and supervisors, and only occasional interactions with members of the general public.

(Tr. 29). At Step Four, the ALJ determined Jones had no past relevant work. (Tr. 39). At Step Five, the ALJ determined, based on Jones's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy Jones could perform. (Tr. 40). Therefore, the ALJ determined Jones has not been under a disability and denied Jones's claim. (Tr. 40-41).

### V. Analysis

Jones raises a single objection to the Commissioner's decision: that the ALJ failed to properly evaluate the opinion of Dr. Raynard G. Fabianke, Jones's treating physician. (Doc. 9 at 4). When determining the weight given to a physician's opinion, an ALJ considers numerous factors, including whether the physician examined the claimant, whether the physician treated the claimant, the evidence the physician presents to support his or her opinion, whether the physician's opinion is consistent with the record as a whole, and the physician's specialty. *See* 20 C.F.R. § 404.1527(c). A treating physician's opinion generally is entitled to substantial or

considerable weight unless "good cause" is shown for discounting that opinion. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir.2011); *see also* 20 C.F.R. § 404.1527(c)92). An ALJ may discount a physician's opinion, including a treating physician's opinion, when the opinion is conclusory, the physician fails to provide objective medical evidence to support his or her opinion, the opinion is inconsistent with the record as a whole, or the evidence otherwise supports a contrary finding. *See* 20 C.F.R. § 404.1527(c).

Additionally, opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see* SSR96-5p, 1996 WL 374183 (1996). Thus, although physicians' opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); SSR 96-5p. Here, the ALJ appropriately considered Dr. Fabianke's opinion, and her decision to assign it little weight is supported by substantial evidence.

In her opinion, the ALJ discussed numerous visits Jones made to Dr. Fabianke, beginning on May 14, 2012, when Dr. Fabianke admitted her to Red Bay Hospital after she presented with a recent history of syncope, chest pain, severe headache, generalized weakness and lethargy, and diabetes mellitus poorly controlled. (Tr. 30, 363). Jones's initial chemistry profile was normal apart from her glucose levels, which had increased to 305. (*Id.* at 30). Jones's medications were adjusted, and Januvia was added to her regimen. (*Id.*). She was then discharged on May 19,

2012, with diagnoses of syncope with change in neurological status, variable control diabetes, and hyperglycemia. (*Id.*). A visit to Dr. Fabianke on August 22, 2012, disclosed Jones was not following the 1500 calorie ADA diet, not taking Januvia, and had lost her blood sugar monitor. (Tr. 31).

The ALJ next discussed Jones's visit to Dr. Fabianke on April 3, 2013, a general examination at which Jones's chief complaint was uncontrolled blood sugar; she reported her glucose levels had mostly been greater than 200. (Tr. 31, 527). Jones's medications were again adjusted. (Tr. 31). At Dr. Fabianke's request, Jones saw Dr. Rajesh Boorgu on May 9, 2013, for a new evaluation due to elevated protein. (Tr. 31). Dr. Boorgu found +1 pitting edema in Jones's lower extremities, but no other abnormalities. (Tr. 31, 507). He prescribed Cozaar. (Tr. 31). At a follow-up visit to Dr. Boorgu, Jones reported that she was tolerating the Cozaar, that she was managing her blood sugar better, and that her feet were hurting but she was doing "ok." (Tr. 31, 503-04).

Jones saw Dr. Fabianke again on May 17, 2013, presenting with increased back and leg pain which she described as constant and moderate. (Tr. 34, 524). Jones's general health was good, her diet was balanced, and she had no compliance problems. (*Id.*). A musculoskeletal examination showed her gait and mobility to be within normal limits, and a lumbar spine examination revealed lower midline paraspinous muscle tenderness, some increased pain with motion, and some decreased range of motion without peripheral deficits. (Tr. 34, 526). Dr. Fabianke prescribed Percocet, Zanaflex, and Lyrica. (Tr. 34). At a routine follow-up visit to Dr. Fabianke on June 28, 2013, Jones was noted to have generally good health, occasional exercise, a balanced diet, no associated symptoms, and no compliance problems. (Tr. 32, 34, 514). Jones had a steady gait and a musculoskeletal exam revealed a normal range of motion. (Tr. 34, 514).

7

Jones returned for another routine visit to Dr. Fabianke on October 7, 2013, seeking to refill her medications. (Tr. 34, 554). Jones had good health, a balanced diet, and no associated symptoms. (Tr. 554). She reported moderate back pain of an unknown duration, fluctuating in intensity and increasing with motion. (Tr. 34, 554). Jones saw Dr. Fabianke again on December 9, 2013, complaining of a cough and seeking refills. (Tr. 34, 551). As with her May 17, 2013 visit Dr. Fabianke noted lower midline paraspinous muscle tenderness, some increased pain with motion, and decreased range of motion without peripheral deficits. (Tr. 34, 552).

On December 16, 2013, at the request of Jones's attorney, Dr. Fabianke completed a questionnaire in which he stated he believed Jones's complaints of moderately severe to severe fatigue and malaise were credible. (Tr. 32, 34, 581). Dr. Fabianke further stated Jones could not sustain any type of job for a normal work week of eight hours per day and forty hours per week at any exertional level, that Jones would miss at least five days per month from work due to her medical problems, and that she would require frequent breaks during the work day due to severe pain in her right shoulder, back legs, and feet. (Tr. 32, 34, 581-82). Dr. Fabianke opined Jones would not be able to climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, and could not perform a job that would require her to stand or walk for two hours in a work day, sit for six hours in a work day, or even occasionally lift over ten pounds. (Tr. 32, 34, 582).

Following the completion of the questionnaire, Jones saw Dr. Fabianke several additional times, including an April 14, 2014, visit for a routine follow-up and for medication refills. (Tr. 32, 629). Again, Jones's general health was good, her diet was balanced, and she had no compliance problems. (*Id.*).

After considering the evidence in the record, the ALJ assigned little weight to Dr. Fabianke's questionnaire. (Tr. 39). The ALJ stated that, "[e]ven though Dr. Fabianke is the

8

claimant's treating physician, the record clearly indicates that he saw her primarily for routine office visits and for ongoing medication refills, and his opinion is contrary to his own medical records, diagnostic and laboratory test results, evidence of medical noncompliance, and with the other substantive medical evidence of record indicating no coronary artery disease, mild to moderate lumbar disease, noncompliance with her insulin regimen, and apparent total resolution of her kidney problems." (*Id.*).

The ALJ's decision to assign little weight to Dr. Fabianke's opinion was supported by substantial evidence. Many of Dr. Fabianke's statements in the questionnaire concern matters reserved for the Commissioner and were not entitled to any special significance notwithstanding they were supplied by a treating physician. Specifically, Dr. Fabianke's opinion Jones could not sustain any job for a normal work week at any exertional level, (*see* tr. 581), is effectively a determination Jones is disabled; therefore, it was not entitled to any particular weight. *See* 20 C.F.R. § 416.927(d)(1), (3). Dr. Fabianke's opinions as to Jones's functional ability to perform physical work tasks, (*see* tr. 582-83), attempt to supply an RFC, and were likewise entitled to no specific weight. *See Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 833, 834 (11th Cir. 2017) (noting that the final responsibility for determining, *inter alia*, a claimant's RFC is reserved to the Commissioner); 20 C.F.R. § 416.927(d)(2), (3).

As the ALJ stated, Dr. Fabianke's notes do not support the disability his opinion attributes to fatigue and malaise due to diabetes. Instead, following Jones's alleged onset date, Dr. Fabianke's notes show no constitutional symptoms and a normal range of motion on June 28, 2013, (tr. 514-17); weakness, but a normal range of motion, on August 30, 2013, (tr. 558-61); no constitutional symptoms apart from fever on September 2, 2013, (tr. 670-73); no constitutional symptoms, but a decreased range of motion without peripheral deficits, on October 7, 2013, (tr.

554-57); no fatigue, malaise, or acute changes to Jones's musculoskeletal structure and extremities on October 28, 2013, (an emergency room visit for a toothache) (tr. 683-84); no constitutional symptoms, but a decreased range of motion without peripheral deficits, on December 9, 2013, (tr. 550-53); no constitutional symptoms, but a decreased range of motion without peripheral deficits, on January 20, 2014, (tr. 584-87); no constitutional symptoms, but a decreased range of motion without peripheral deficits, on March 4, 2014, (tr. 637-40); no constitutional symptoms, but a decreased range of motion without peripheral deficits, on March 24, 2014, (tr. 633-36); and weakness with a decreased range of motion without peripheral deficits on April 14, 2014, (tr. 629-32). While these notes support some limitation in Jones's physical abilities, there was substantial evidence for the ALJ to conclude they do not support that those limitations were produced by weakness, fatigue, or malaise (which Jones only reported on two of these ten occasions she sought treatment from Dr. Fabianke, and which only once coincided with a decreased range of motion) or were as severe as those suggested by Dr. Fabianke. Additionally, test results from other physicians during the same period showed a normal range of motion. (*See* tr. 609-10 ("moves all extremities well" noted by Dr. Brad McAnalley in March 7, 2014 observation report); 686-87 (no constitutional issues and full range of motion in all extremities noted by Dr. John Looney at February 11, 2014 ER visit for epigastric pain)). These inconsistencies provided good cause for the ALJ to assign little weight to Dr. Fabianke's opinion.

Jones first attacks the ALJ's findings by challenging the ALJ's consideration of Dr. Fabianke's treating relationship with Jones, rhetorically inquiring what else beyond routine office visits and medication refills could comprise a relationship with a treating physician. (Doc. 9 at 6). It was not improper for the ALJ to consider the purpose of Jones's visits to Dr. Fabianke

10

and the treatment she received there. *See* 20 C.F.R. § 416.927(c)(2)(ii) (noting the ALJ "look[s] at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed"). Jones offers no reason why the ALJ's decision—guided by the regulations—to factor the generally routine nature of the office visits into his overall assessment of the severity of the symptoms Dr. Fabianke described in the questionnaire was erroneous.

Jones complains Dr. Fabianke's opinion was given little weight in part due to the absence of "other medical evidence of record indicating no coronary artery disease, mild to moderate lumbar disease, noncompliance with her insulin regimen, and apparent total resolution of her kidney problems." (Doc. 9 at 8). She characterizes the references to coronary artery disease and kidney problems as "nonsensical," as Dr. Fabianke never expressed an opinion as to those conditions. (*Id.*). She also seems to argue Dr. Fabianke's references to the "severe pain in right shoulder, back, legs, and feet" that would require frequent breaks at work was necessarily a reference to diabetes rather than lumbar disease, as her "disability case primarily centers around her uncontrolled insulin dependent diabetes mellitus" and Dr. Fabianke listed diabetes on (and omitted lumbar disease from) a short statement regarding Jones's medical conditions. (*Id.*). If this is an allegation of error on the part of the ALJ, it is not clear why or how dismissing alternative impairments (some of which Jones herself alleged to be disabling, (*see* tr. 240), and some of which the ALJ separately determined to be severe impairments, (*see* tr. 24)) as potential bases for Dr. Fabianke's decision renders the ALJ's decision unsupported by substantial evidence.

Jones appears to argue that because the records of her visits with Dr. Fabianke are "computer generated" and contain "nothing . . . changed in [Jones's] 'History of Present Illness,'" they are not actually evidence of Dr. Fabianke's assessment. (Doc. 9 at 7-8). In

11

support of this contention, she cites the fact that on April 14, 2014, "someone at Dr. Fabianke's office put a line through medications Jones was not taking at the time." (*Id.*). She also suggests that whenever "Dr. Fabianke had a chance to actually write something regarding Jones' functional status with his own hand, he did so," pointing to the December 16, 2013 questionnaire. (*Id.*). Crediting this argument would require the undersigned to conjecture that only Dr. Fabianke's handwritten treatment notes are reliable and second-guess the ALJ's decision to view the typed notes as inconsistent with Dr. Fabianke's questionnaire. This is incompatible with the court's role in reviewing a Social Security appeal; a reviewing court is explicitly forbidden to reweigh the evidence. *Bloodsworth*, 703 F.2d at 1239. Additionally, the assertion that nothing changed in the "History of Present Illness" section of the records between visits is contradicted by the records' content, which in fact differs from encounter to encounter. (*Compare, e.g.,* tr. 514 (June 28, 2013 visit noting, *inter alia*, "Exercise: occasional") *with* tr. 524 (May 17, 2013 visit noting, *inter alia*, "Exercise: none")).

Jones also argues in determining Dr. Fabianke's opinion was contrary to his medical records, diagnostic and laboratory test results, the ALJ wrongly stated she was noncompliant with her diet or treatment. (Doc. 9 at 6-7). She bases this contention on treatment notes from her August 22, 2012 visit to Dr. Fabianke, which state:

> T/C FSBS 293 Current Rx Glyburide 5mg # one tab aid
> Not following 1500 Cal ADA Diet not taking Januvia 100 mg c/o nausea
> Pt lost bs meter Medicaid will not cover per pt — patient instructed to make
> an apt to discuss options w Dr. Fabianke – 8/24/12 11:00

(Tr. 426). Jones states this is the only time she was noncompliant with her diet and that the ALJ failed to inquire into an alternative reason for Jones's noncompliance with her medication: noncoverage by Medicaid of either Januvia or Jones's blood sugar meter. (Doc. 9 at 7). She also

12

argues the ALJ's opinion was self-contradictory in that it acknowledges Dr. Fabianke's notes that Jones had no compliance problems on several visits but nevertheless stated Jones was noncompliant with her insulin regimen. (*Id.* at 8). Jones is incorrect that the August 22, 2012 visit was the only instance of dietary noncompliance, because the record indicates at least one other instance. (*See* tr. 527 (noting on April 3, 2013 visit "Compliance problems: diet"). However, the evidence is ambiguous as to whether Jones offered a legitimate explanation for either her failure to test her blood sugar due to her lost monitor or her failure to take Januvia. Even if the ALJ's failure to resolve this ambiguity was error, it was harmless; even excepting this instance, the record still contains evidence of dietary noncompliance, which the ALJ discussed, and which support the conclusion Jones was medically noncompliant. Additionally, the ALJ's decision to assign little weight to Dr. Fabianke's opinion was not based on the specific instance of noncompliance Jones cites as ambiguous, and the ALJ provided a number of additional reasons for discounting Dr. Fabianke's opinion. *See Loveless v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x 866, 869 (11th Cir. 2017) (factual error in assessing medical opinion harmless when it was not the basis for the ALJ's decision and additional reasons to discount opinion offered).

Finally, Jones objects to the ALJ's discussion of evidence inconsistent with Dr. Fabianke's opinion that predates June 12, 2013, Jones's alleged date of disability, taking particular issue with the ALJ's discussion of the opinion of Dr. Laura M. Lindsey. (Doc. 9 at 9). As a general matter, "[m]edical opinions that predate the alleged onset of disability are of limited relevance." *Simpson v. Colvin*, No. 2:14-CV-00946-AKK, 2015 WL 139329, at *4 (N.D. Ala. Jan. 12, 2015) (quoting *Carmickle v. Comm'r, Soc. Sec. Admin*, 533 F.3d 1155, 1165 (9th Cir. 2008)). However, they may be of *some* relevance in some cases: for example, when they relate

13

to the conditions a claimant claims are disabling. *See Hamlin v. Astrue*, No. 3:07-CV-507-J-TEM, 2008 WL 4371326, at *4 (M.D. Fla. Sept. 19, 2008) ("Although here the medical records covered a period of time prior to Plaintiff's alleged onset date, the records do concern many of the same impairments Plaintiff claims as a basis for disability."). In this case, Jones offers no authority for the proposition that considering such evidence automatically requires reversal, nor would it be appropriate in this case to do so given the evidence considered by the ALJ tracked the progress of Jones's diabetes and relationship with Dr. Fabianke.

Jones's contentions regarding Dr. Laura Lindsey's examination are problematic for other reasons. Dr. Laura Lindsey performed a consultative examination of Jones on November 15, 2012, which found that Jones was not limited by her physical conditions. (Tr. 499). Jones argues the ALJ assigned this opinion no actual weight by stating only that she "substantially considered" the opinion. (Doc. 9 at 10-11). However, Jones ignores that there are in fact two different physicians named "Dr. Lindsey" who appear in the record, only one of whose opinions was "substantially considered" by the ALJ: Dr. James B. Lindsey, who performed a psychological consultative evaluation of Jones on November 15, 2012. (Tr. 35, 39, 490-94). Not only did the ALJ specifically state she was relying on Dr. James Lindsey's opinion regarding Jones's mental health, she also referenced the exhibit containing the psychological evaluation. (Tr. 39 (citing Exhibit 9F)). While Dr. James Lindsey's opinion also predates the date of disability, Jones makes no argument the ALJ's conclusions regarding her mental health were erroneous. To the extent Jones claims the ALJ relied on Dr. Laura Lindsey to discredit Dr. Fabianke, there is no evidence for this in the record and no reversible error as a result.[4]

---

[4] As the Commissioner notes, the ALJ did not specifically assign weight to Dr. Laura Lindsey's opinion. (Doc. 10 at 15). Nor did she discuss Dr. Laura Lindsey's opinion beyond

14

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Jones's claim for a period of disability and disability insurance benefits is **AFFIRMED** and this action **DISMISSED WITH PREJUDICE.**

DONE this 18th day of September, 2017.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

---

noting its existence in summarizing the medical record. Thus, her findings do not appear to have affected the ultimate determination of the case, and any error that resulted from failing to assign weight to the opinion was harmless. *Hunter v. Comm'r of Soc. Sec.*, 609 F. App'x 555, 558 (11th Cir. 2015)